LATHROP and others *v.* THE JUNCTION RAILROAD COMPANY
and others.*

(*Circuit Court, E D. Pennsylvania.* October 28, 1880.)

1. RAILROAD—OWNERSHIP OF SECTION OF ROAD FORMING PART OF THE
   LINE OF ANOTHER COMPANY IN WHICH IT IS A STOCKHOLDER—RIGHT
   OF LATTER COMPANY TO USE SUCH SECTION—PRELIMINARY INJUNC-
   TION.—A railroad was built for the purpose of uniting three other
   roads, which were the principal owners of its corporate stock. One of
   these three other roads allowed a portion of the uniting road to be
   located over its property, and built that portion at its own expense.
   Subsequently it claimed the exclusive control over that portion, and
   refused to allow the uniting road to transport freight and passengers
   thereon. *Held,* that although it might have a proprietary right in
   that portion of the road, it was bound to allow the uniting road a
   reasonable use thereof, as a part of the latter's continuous line. *Held,
   further,* that the right to such use might be enforced by a preliminary
   injunction restraining the company owning the portion of road from
   interfering with the transportation of the freight and passengers car-
   ried by the uniting road.

Motion for a Preliminary Injunction.

This was a bill in equity filed by two stockholders of the
Junction Railroad Company against the Junction Railroad
Company and the Pennsylvania Railroad Company. The
bill alleged that the Junction Railroad Company was by law
obliged, under certain regulations, to transport freight and
passengers over its road, but that it had, in consequence of
a claim of the Pennsylvania Railroad Company to the exclu-
sive property in and control over a portion of its road, refused
to transport freight of the Baltimore & Ohio Railroad Com-
pany, in course of transmission from Baltimore to New York,
by means of a route in which the Junction Railroad was a
connecting link. The bill prayed for an injunction restrain-
ing the Junction Railroad Company from declining or refusing
to transport such freight, and restraining the Pennsylvania
Railroad Company from interfering with such transportation.

The Pennsylvania Railroad Company filed an answer as-
serting an exclusive right to and over a section of road form-

*Prepared by Frank P. Prichard, Esq., of the Philadelphia bar.

ing a portion of the line known as the Junction Railroad, and denying that there was any duty or liability on the part of the Junction Railroad Company to transport freight or passengers over such section.

The pleadings and affidavits disclosed the following facts: The Pennsylvania, the Philadelphia & Reading, and the Philadelphia, Wilmington & Baltimore Railroad Companies operated respectively three lines of railroad, terminating in the city of Philadelphia, east of the Schuylkill river. In the year 1860 a charter was obtained from the legislature for a corporation to be known as the Junction Railroad Company, with power to build a road on the west bank of the Schuylkill river, from a point on the Philadelphia & Reading Railroad to a point on the Pennsylvania Railroad, and from thence to a point on the Philadelphia, Wilmington & Baltimore Railroad, thus connecting those three roads, and allowing an interchange of freight and passengers without a transfer through the populous parts of the city. Under this charter and various supplements the road was built, and bonds to the extent of $800,000, secured by mortgages covering the entire line of road, were issued to defray the cost. With the exception of a few shares held by individuals, the stock of the company was all taken and held by the three railroads above named. During the construction of the road the president, secretary, and chief engineer of the company were officers of the Pennsylvania Railroad Company. In constructing the Junction Railroad a portion of its middle section was built upon ground owned by the Pennsylvania Railroad. In the year 1866 a dispute arose between the Junction Railroad and the Pennsylvania Railroad as to the ownership of this portion of the road, the latter company claiming that it had constructed this portion of the road at its own expense, and was the sole owner thereof. This dispute was terminated by a decision of the supreme court of Pennsylvania (*Pennsylvania R. Co.'s Appeal*, 80 Pa. St. 265) that this portion of the road was the property of the Pennsylvania Railroad Company, without prejudice, however, to the right of the Junction Railroad Company "to assert either at law or in equity any right

or rights (if any they have) relating to the use of" the said portion of the road.

By the leasing of different lines connecting the cities of Philadelphia and New York, the Pennsylvania Railroad Company and the Philadelphia & Reading Railroad Company became competing lines as to freight brought from the west over the Baltimore & Ohio Railroad and destined for New York. The Pennsylvania Railroad Company thereupon refused to allow the Junction Railroad Company to transport passengers or freight over the portion of the track above referred to.

Two of the individual stockholders then filed the present bill. At the same time similar bills were filed against the same defendants by the Baltimore & Ohio Railroad Company and by the Central Railroad Company of New Jersey.

Upon the argument it was contended on the part of the Pennsylvania Railroad Company not only that it had an exclusive right to the portion of road owned by it, but that, however this point might be finally decided, no preliminary injunction of the nature of the one asked for by complainants could be issued under the circumstances of this case.

*E. G. Platt, Samuel Dickson,* and *John C. Bullitt,* for the complainants.

*James E. Gowen,* for Junction Railroad Company.

*Wayne MacVeagh* and *Chapman Biddle,* for Pennsylvania Railroad Company.

McKENNAN, C. J. It is no part of my present purpose to notice any other than the main question in this case. It is sufficient for me to say, as to several other questions discussed by counsel at the argument, that, in my opinion, the court has power to grant the preliminary relief prayed for, and that the alleged impending injury to the interests of the complainants is of such a character as to entitle them to invoke the interposition of the court.

The Junction Railroad Company is a corporation created by a special act of the Pennsylvania legislature, dated May 30, 1860, whereby it was authorized to "construct a railroad commencing at a point upon the Philadelphia & Reading Railroad, at or near the bridge of said company, near Peters

island, in the river Schuylkill; thence by the best route to a point upon the line of the Pennsylvania Railroad, within one mile east of George's run, at the village of Hestonville; thence by the line of the Pennsylvania Railroad, by the most direct and practicable route, to a point upon the line of the Philadelphia, Wilmington & Baltimore Railroad."

By a supplement to this charter, passed in 1861, the Junction Railroad Company was authorized to "make a complete line of railway from a point on the Philadelphia & Reading railroad, at or near the bridge at Peters island, to a point on the Philadelphia, Wilmington & Baltimore Railroad, at or near Gray's ferry bridge, by the most convenient and practicable route."

By further legislation the company was authorized to borrow $500,000 upon mortgage of its property and franchises, and, upon this security, a loan of that amount was negotiated upon the authorized guaranty of it by the three companies named.

The stock of the company was taken and is now held by the Pennsylvania Railroad Company, the Philadelphia & Reading Railroad Company, and the Philadelphia, Wilmington & Baltimore Railroad Company, except a few shares which are held by individuals.

At the organization of the company, in 1861, the president of the Pennsylvania Railroad Company was elected its president, and occupied that position until 1867, during which time the whole line of its road was located definitely between its prescribed *termini*. Under his direction a large sum, to-wit, about $870,000, was expended in its construction, and the whole of the road, except that part between Market and Thirty-fifth streets, was completed by it.

This intervening part was constructed by the Pennsylvania Railroad Company, and was held by the supreme court of Pennsylvania to be the property of that company, and this decision must be regarded as conclusive so far as the legal ownership of that link is concerned. But, in view of the admission that the Junction Railroad may have rights touching the use of the section of road referred to, the decree was

entered without prejudice to such rights, or to the assertion of them in appropriate proceeding.

Various other facts are alleged in the bills of complaint, and are verified by the accompanying affidavits, which, all together, constitute a "strange, eventful" history of the construction of the road.

Enough of them have been here stated to indicate the vital object, and the essential importance to the public of the construction of the road.

The Pennsylvania, the Philadelphia & Reading, and the Philadelphia, Wilmington & Baltimore Railroads terminated at Philadelphia. They were unconnected with each other, and so the immense traffic requiring transfer from the one to the other was necessarily conducted with great expense, inconvenience, and embarrassment. These difficulties could be almost entirely avoided by the construction of a continuous line, only about four miles long, from Gray's ferry to Peters island, and accordingly the Junction road was projected and made. A broken line, with a gap in the middle of it, would not answer the purpose; its continuity was absolutely essential to effectuate the object of its creation, as well as to meet the just expectation of its stockholders and the public. So, in the annual report of the Pennsylvania Railroad Company, February 3, 1862, it is said: "The Philadelphia, Wilmington & Baltimore Railroad Company, the Philadelphia & Reading Railroad Company, and the Pennsylvania Railroad Company have organized the Junction Railroad Company, under a charter procured from the legislature of 1860, and amended at the last session. The object of this line is to connect these three railroads by a *continuous* line along the west bank of the Schuylkill river, from the Reading Railroad, near Peters island bridge, to the Philadelphia, Wilmington & Baltimore Railroad, at Gray's ferry, *intersecting the Pennsylvania Railroad near the wire bridge at Fairmount*, so that an interchange of freight between these lines may be effected without passing through the populous portions of the city."

In apparent accordance with the declaration, were all the acts and declarations of the Pennsylvania Railroad Company

·during the progress of construction, until the controversy arose as to the ownership of the middle section, and they may, therefore, be fairly regarded as in a great measure inducing the expenditure of the large sum laid out by the Junction Railroad in its line. Any other hypothesis must assume that the Junction Railroad Company was willing to imperil ·the chief object of the enterprise, and the value of its investment, by making itself entirely dependent upon the arbitrary will of the owner of the middle section for the profitable use ·and enjoyment of the two other sections of the line.

Ought the Pennsylvania Railroad Company, then, to be permitted so to control the section of the road of which it is the proprietor as to exclude the Junction Railroad Company from participation in its use as part of a continuous line? I think ·not. It must be treated, in equity, as having agreed to such reasonable use of the section owned by it as is necessary to effectuate the common object of those who furnished the means of constructing the Junction Road as a continuous line; and, to that extent, to a modification of its proprietary rights. It would certainly be unwarrantable in the Junction Company to exclude the Pennsylvania Railroad Company from the beneficial use of the northern and southern sections of the Junction Road, either by denying it altogether, or by imposing burdensome restrictions upon it. Why ought not a like measure of justice be meted out to the other interests associated with the Pennsylvania Company, in reference to the middle section of the Junction Road, when it induced these interests to make large expenditures of money and incur large liabilities, upon the faith that this middle section should constitute an indispensable constituent of a joint enterprise? There is no just ground for any discrimination.

While I am of opinion that the Junction Railroad Company may have the right to employ its own motive power over the ·whole line between its *termini*, yet I think the operations of the road should be conducted with as little friction as possible, and without any avoidable abridgment of the proprietary rights of the Pennsylvania Railroad Company. The injunc-

tion granted, therefore, will not restrain that company from operating its own portion of the line with its own motive power.

1. And now, October 28, 1880, it is ordered and decreed that an injunction be granted, until further order of this court, enjoining and restraining the said Junction Railroad Company, its officers, servants, and agents, from declining or refusing, or in any manner failing, to perform the duties required of them by the charter of said company, and especially from declining or refusing to furnish motive power, haul, receive, ship, or transport over its road freight or passengers arriving in cars by the Philadelphia, Wilmington & Baltimore Railroad destined for the Philadelphia & Reading Railroad or its connections, or from declining or refusing to furnish motive power, haul, receive, ship, or transport freight or passengers arriving in cars by the Philadelphia & Reading Railroad destined for the Philadelphia, Wilmington & Baltimore Railroad or its connections.

2. That the said Pennsylvania Railroad Company, its officers, agents, and servants, be enjoined and restrained from interfering with, or in any manner hindering, the said Junction Railroad Company from performing its said corporate duties, and transporting freight and passengers as aforesaid.

3. This injunction shall not be taken to restrain the said Pennsylvania Railroad Company from furnishing exclusively the motive power to transport the cars aforesaid over and upon that portion of the Junction line which is situated between the north side of Market and Thirty-fifth streets in the city of Philadelphia.